UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TRAVELERS PROPERTY CASUALTY INSURANCE COMPANY, | ) ) ) ) | CASE NO. 5:21-cv-2186 |
| PLAINTIFF, | ) ) | JUDGE SARA LIOI |
| vs. | ) ) ) | MEMORANDUM OPINION AND ORDER |
| R-TEK INSULATION, INC., | ) ) ) | |
| DEFENDANT. | ) | |

In this diversity action, plaintiff Travelers Property Casualty Insurance Company ("plaintiff" or "Travelers") seeks to recover, as subrogee, damages associated with a fire at a property owned by its insured. (*See generally* Doc. No. 1 (Complaint).) The matter is set for a jury trial in July 2023. (Doc. No. 16 (Case Management Plan and Trial Order).) Now before the Court is Travelers' motion in limine to exclude at trial the testimony of the expert of defendant R-Tek Insulation, Inc. ("defendant" or "R-Tek"). (Doc. No. 35 (Motion).) R-Tek opposes the motion (Doc. No. 39 (Response)), and Travelers has replied. (Doc. No. 40 (Reply).) For the reasons that follow, Travelers' motion is granted.

I.  **BACKGROUND**

This litigation arises out of a January 4, 2020, fire in a residential home that purportedly "originated in the attic around a can light protruding into the attic from the ceiling space above the kitchen sink." (Doc. No. 1 ¶ 7.) It is undisputed that R-Tek, a company "engaged in the business of home insulation[,]" was hired to blow insulation into the attic two days before the fire. (*Id*. ¶¶

3, 8–9.) It is Travelers' contention that the fire started "when the canned light ignited insulation negligently installed by R-Tek." (*Id*. ¶ 10.) Specifically, Travelers alleges that the fire was caused by a lack of shielding around the light that should have been accounted for by R-Tek, but was not, during its pre-insulation inspection. (*Id*. ¶ 11.) Travelers brings claims against R-Tek sounding in negligence, breach of implied and/or express warranty, breach of contract, and respondeat superior. (*See generally id*.)

## II. *Daubert* Motion

On December 14, 2022, defendant identified Paul Middlecoop ("Middlecoop"), the former owner[1] of R-Tek, as an expert witness. (Doc. No. 34 (Notice).) Defendant's notice does not identify Middlecoop's area(s) of expertise or the areas in which Middlecoop is expected to testify as an expert at trial. (*See id*.) Further, defendant has not identified any report that Middlecoop authored, nor has it supplied a curriculum vitae for this proposed expert witness. Middlecoop was, however, deposed by Travelers on January 12, 2023, and his deposition transcript has been filed on the docket. (*See* Doc. No. 37.) By the present motion, Travelers moves to prevent Middlecoop from offering any expert testimony at trial with regard to "fire origin and cause and/or electrical engineering[,]" arguing that Middlecoop is not qualified to offer expert testimony on these topics and that any such testimony would not be based on reliable principles and methods. (Doc. No. 35, at 1.)

---

[1] Middlecoop testified in his deposition that he started R-Tek in 2000. The business was purchased by Berry Insulation sometime in September 2020. (Doc. No. 37 (Deposition of Paul Middlecoop), at 14–15.) (All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.)

### A. Law on Expert Testimony

Travelers' motion to exclude is governed by Rule 702 of the Federal Rules of Evidence.[2] Rule 702 allows an expert witness to provide testimony in opinion form if: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. The Supreme Court has interpreted this rule to require judges to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharm., Inc*., 509 U.S. 579, 589, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). These prerequisites apply not only to "'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999) (quoting Fed. R. Evid. 702). Thus, "*Daubert* attempts to strike a balance between a liberal admissibility standard for relevant evidence on the one hand and the need to exclude misleading 'junk science' on the other." *Best v. Lowe's Home Ctrs., Inc*., 563 F.3d 171, 176–77 (6th Cir. 2009) (citation omitted).

Although there is "no definitive checklist or test" to strike this balance, relevant factors include: (1) whether a theory or technique "can be (and has been) tested[;]" (2) whether a "theory or technique has been subjected to peer review and publication[;]" (3) the "known or potential rate

---

[2] The parties erroneously cite to Ohio R. Evid. 702. "The Federal Rules of Evidence, rather than the state evidentiary laws, apply in federal diversity proceedings." *In re Dow Corning Corp*., 541 B.R. 643, 647 (E.D. Mich. 2015) (citing, among authority, *Legg v. Chopra*, 286 F.3d 286, 289 (6th Cir. 2002)).

of error[;]" and (4) whether the theory or technique is generally accepted. *Daubert*, 509 U.S. 593–94 (citations omitted). These factors are not exhaustive and the inquiry is "a flexible one," *Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671, 677 (6th Cir. 2011) (citations omitted), for districts courts must be mindful that "the gatekeeping inquiry must be 'tied to the facts of a particular case.'" *Kumho Tire*, 526 U.S. at 150 (quoting *Daubert*, 509 U.S. at 591) (some internal quotation marks omitted). Notwithstanding this individualized inquiry, a district court is "not required to admit expert testimony 'that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.'" *Nelson v. Tennessee Gas Pipeline Co.*, 243 F.3d 244, 254 (6th Cir. 2001) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997)). Finally, "[i]t is the proponent of the testimony that must establish its admissibility by a preponderance of proof." *Id.* at 251 (citing *Daubert*, 509 U.S. at 592 n.10).

"Where the reliability of the evidence is in dispute, it is more appropriate for a judge to admit the evidence than to keep it from the fact-finder because '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Great N. Ins. Co. v. BMW of N. Am. LLC*, 84 F. Supp. 3d 630, 637 (S.D. Ohio 2015) (quoting *Daubert*, 509 U.S. at 596).

A witness must establish his expertise by reference to "knowledge, skill, experience, training, or education" in order to qualify as an expert under Rule 702. Fed. R. Evid. 702. "[T]here are many different kinds of experts, and many different kinds of expertise." *Kumho Tire*, 526 U.S. at 150. Although the "qualification" prong of the analysis is treated liberally, "a witness is not an expert simply because he claims to be." *Rose v. Truck Ctrs., Inc.*, 388 F. App'x 528, 533 (6th Cir.

4

2010) (citing *Pride v. BIC Corp.*, 218 F.3d 566, 577 (6th Cir. 2000)). "The issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question." *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994).

### B. Discussion

Middlecoop has approximately twenty years of experience in the insulation industry. (Doc. No. 37, at 14–15.) When he first became an insulation installer, he received training from an individual with "a number of years of experience in the industry." (*Id.* at 13–15.) While Middlecoop holds no degrees or state certifications relating to insulation installation, he has completed numerous courses on the subject. (*Id.* at 12–13.) During the time he ran R-Tek, he attended several training clinics sponsored by Advance Fiber Technology, the company that supplied R-Tek with its insulation. (*Id.* at 17.) For example, in May 2005, Middlecoop attended a seminar on cellulose insulation in fire walls, which focused on properly prepping a newly constructed house, as well as air sealing and fire blocking it. (*Id.* at 21.)

During this same time period, Middlecoop also developed a familiarity with canned or "canister" lights—recessed lighting that is installed in an opening in a ceiling—and the need to cover canister lights that cannot safely come into contact with insulation (*i.e.*, non-IC rated[3] lights). (*Id.* at 21–22, 24–25.) He testified that, based on his understanding and knowledge in the insulation installation industry, he was aware that when insulation comes into contact with a non-IC rated

---

[3] Even though the parties' briefing fails to explain the term "non-IC rated", the Court has gleaned from the transcript of Middlecoop's deposition that there is a recently developed standardized rating system for lighting that is based upon the heat given off by the light. Those lights that were manufactured before the rating system, or that do not otherwise qualify as safe for use around insulation, would be "non-IC rated." (*See generally* Doc. No. 37, at 21–25.)

5

light, the heat from the light can ignite the insulation. (*Id*. at 25.) When asked if he knew if the fire at issue in this case was caused by a non-IC rated canister light igniting the insulation, Middlecoop testified, "I think allegedly that's the conclusion that an investigator came up with. Whether that was the real reason or not, I don't know. That's what I had heard that they had come up with." (*Id*.)

### 1. *Origin of the Fire*

Based on the foregoing, the Court finds that Middlecoop is qualified to testify as to industry standards for installing insulation. *See Levin v. Dalva Bros., Inc.*, 459 F.3d 68, 79 (1st Cir. 2006) (noting that "[e]xpert testimony on industry standards is common fare in civil litigation" (collecting cases)). He also possesses the necessary expertise to testify as to the dangers associated with installing insulation near non-IC rated canister lights, as well as the accepted practices and procedures relating to the safe installation of insulation around non-IC rated lights. *See id*.

Nevertheless, the Court agrees with Travelers that Middlecoop lacks the requisite expertise to offer an opinion on the origin of the fire at issue in this case.[4] He testified that he was not a fire investigator, and there is no evidence that he has any training or experience in investigating the origins of fires. (Doc. No. 37, at 25.) The fact that Middlecoop possesses knowledge of how a fire *might theoretically* be started by the heat from a non-IC rated canister light in no way qualifies him to give an expert opinion on the cause or origin of the fire in this case. Middlecoop's attempt to endorse a theory he heard an unknown investigator had "come up with" that an over-heated non-IC rated canister light was the cause of the fire amounts to "mere speculation and overreaching of

---

[4] In fact, in his deposition, Middlecoop testified that he did not know the origin of the fire and was not offering any opinion on the subject. (Doc. No. 37, at 25–26.)

6

his demonstrated expertise, devoid of any of the indicia of reliability which *Daubert* and Rule 702 demand." *See, e.g., Kerns v. Sealy*, No. 06-cv-431, 2007 WL 2012867, at *6 (S.D. Ala. July 6, 2007) (finding expert on foam insulation not qualified to offer expert testimony on the cause of a fire).

And even if Middlecoop were qualified to render an opinion as to fire origin, there is no evidence that "his" theory was the product of reliable principles and methods recognized in the fire investigation industry. The party seeking to have testimony admitted bears the burden of showing "that the expert's findings are based on sound science, and this will require some objective, independent validation of the expert's methodology[,]" meaning that "the expert's bald assurance of validity is not enough." *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995) (on remand). Here, Middlecoop testified to no investigation, inspection, or analysis that he conducted—or was qualified to conduct—at the scene or on the insulation or canister light in the kitchen that would be able to rule out other causes of the fire.[5] *See, e.g., Chester Valley Coach Works, Inc. v. Fisher-Price*, No. 99-cv-4197, 2001 WL 1160012, at *3 (E.D. Pa. Aug. 29, 2001) (holding that an expert's opinion "as to fire origin and causation [that was] not based on any testing, experimentation, or generally accepted texts, treatises, or other writing" and was instead "based primarily upon his 'experience and education'" was not admissible under Rule 702). Defendant, therefore, has not met its burden because it has failed to establish that Middlecoop's

---

[5] One such acceptable standard is set forth in the National Fire Protective Association 921: Guide for Fire and Explosion Investigations ("NFPA-921"). *See Indiana Ins. Corp. v. Gen. Elec. Co*., 326 F. Supp. 2d 844, 849 (N.D. Ohio 2004) (noting that "NFPA-921 is a recognized guide for assessing the reliability of expert testimony in fire investigations" and collecting cases; *see, e.g., Travelers Indem. Co. v. Indus. Paper & Packaging Co*., No. 3:02-cv-491, 2006 WL 1788967, at *4 (E.D. Tenn. June 27, 2006) (endorsing the expert's use of the "NFPA 921 [as] a peer reviewed and generally accepted standard in the fire investigation community" (collecting cases)). There is no evidence that Middlecoop has training or experience in the NFPA-921 or some other similarly accepted testing and investigation tool for identifying the origin of a fire.

7

opinion—which is nothing more than a regurgitation of the opinion of some unidentified inspector—was based on scientifically valid principles, was repeatable, had been the subject of peer review or publication or was based on a generally accepted method for determining the cause of the house fire. Accordingly, Middlecoop will not be permitted to offer an expert opinion on the origin of the fire.

2. *Electrical Engineering*

There is also no basis under Rule 702 for permitting Middlecoop to offer an expert opinion in the area of electrical engineering. Middlecoop is not an electrical engineer, he holds no degrees or certifications in this subject area, and there is no evidence that he has ever received training therein. While R-Tek points to Middlecoop's training relative to canister lights and the fire danger non-IC rated lights pose near insulation, there is nothing in the record to suggest he is qualified to testify to the electrical engineering that goes into a canister light or to offer an expert opinion on whether the electrical system of a particular canister light failed. "The fact that a proposed witness is an expert in one area, does not *ipso facto* qualify him to testify as an expert in all related areas." *See Shreve v. Sears, Roebuck & Co.*, 166 F. Supp. 2d 378, 391 (D. Md. 2001) (mechanical engineer was not qualified to render an expert opinion on the safe design and operation of snow throwers (collecting similar cases)); *see, e.g., Burgett v. Troy-Bilt LLC*, No. 12-cv-25, 2013 WL 3566355, at *2–3 (E.D. Ky. July 11, 2013) (mechanical engineer did not have the requisite skill, education, and training to testify about a lawnmower's alleged electrical issues). In sum, defendant has failed to demonstrate that Middlecoop possesses any special skill, knowledge, or experience concerning the electrical engineering at issue in this case. Because Middlecoop is not "qualified as an expert

by knowledge, skill, experience, training, or education" in the area of electrical engineering, he may not offer expert testimony on this subject.[6] *See* Fed. R. Evid. 702.

### III. CONCLUSION

For the foregoing reasons, plaintiff's motion to prevent defendant's expert, Paul Middlecoop, from offering expert testimony at trial relating to the origin of the fire at issue in this case or electrical engineering is granted.

**IT IS SO ORDERED**.

Dated: May 17, 2023

**HONORABLE SARA LIOI
UNITED STATES DISTRICT JUDGE**

---

[6] Additionally, as previously observed, there is no evidence that Middlecoop examined the premises or conducted any experiments or tests at the scene or upon the canister light using reliable principles and methods. As a result, any theory he may possess in this area is not "based on sufficient facts or data" or "the product of reliable principles and methods" and his testimony relative to any theory he holds grounded in the science of electrical engineering would not be reliable. Fed. R. Evid. 702.